UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KELLY BUTLER, ET AL., Plaintiff | CIVIL ACTION NO. 1:16-CV-01158 |
| VERSUS | CHIEF JUDGE DRELL |
| EDWY G. CRAFT, ET AL. Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING AND ORDER

In this First Amendment retaliation case, Plaintiffs – all former municipal employees – claim they were fired for supporting the unsuccessful candidate in a mayoral election. Before the Court are: (1) a Motion to Dismiss (Doc. 5) filed by Defendants Mayor Edwy Gene "Buz" Craft ("Mayor Craft") and the City of Vidalia (the "City"), seeking dismissal of Plaintiffs' claims under 42 U.S.C. § 1983 with prejudice, and; (2) a Motion for Partial Dismissal (Doc. 28) filed by Defendant The Travelers Indemnity Company ("Travelers"), which basically incorporates the arguments submitted by Mayor Craft and the City.

The Motions are granted in part and denied in part. Defendants argue Plaintiffs have failed to state a viable municipal liability claim against the City under § 1983. However, Plaintiffs have pleaded an adequate claim under the "single decision theory of liability," and binding jurisprudence applying that theory. Defendants also seek dismissal of Plaintiffs' claims against Mayor Craft in his official capacity. Because those claims are redundant of Plaintiffs' claims against the City, they should be dismissed.

I.  Background

Hyman Copeland ("Copeland") was elected Mayor of the City of Vidalia in 1992. During his tenure, Copeland hired each of the Plaintiffs as City employees.

Mayor Craft challenged Copeland in the 2016 mayoral race. Plaintiffs actively supported and campaigned for Copeland.

On March 5, 2016, Mayor Craft won the election and unseated Copeland. Mayor Craft then terminated Plaintiffs. Plaintiffs allege Mayor Craft's decision to terminate them "was motivated by illegal, unconstitutional, and politically retaliatory considerations" – specifically, in retaliation for Plaintiffs' support of Copeland in the election. (Doc. 1, p. 2).

Plaintiffs initially filed suit under 42 U.S.C. § 1983 against the City, Mayor Craft (in his individual and official capacities), and "XYZ Insurance Company, a provider of insurance coverage for" the City and Mayor Craft. (Id., p. 1). Plaintiffs assert violations of their rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs seek lost wages and benefits, damages for mental anguish, punitive damages, and attorney's fees.

Plaintiffs filed a First Amended Complaint naming Travelers and Louisiana Farm Bureau Mutual insurance Company ("Farm Bureau") as defendants. (Doc. 21, p. 1). Farm Bureau has yet to make an appearance in the case.

Mayor Craft, the City, and Travelers (collectively herein, "Defendants") argue that Plaintiffs' claims against the City, asserting liability under a theory of *respondeat superior*, should be dismissed. Defendants further maintain that

Plaintiffs' claims against Mayor Craft should fail in substance, or alternatively, should be dismissed as duplicative of Plaintiffs' claims against the City.

II. Law and Analysis

A. Standards governing the Motion to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Anderson v. Valdez, 845 F.3d 580, 589 (5th Cir. 2016) (quoting Iqbal, 556 U.S. at 678). While detailed factual allegations are not necessary, the "'allegations must be enough to raise a right to relief above the speculative level.'" Anderson, 845 F.3d at 589 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Franchise,

3

L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016). "Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (quoting Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005)).

### B. Plaintiffs have adequately pleaded claims against the City and Mayor Craft in his individual capacity.

Under 42 U.S.C. § 1983 and Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), "local governing bodies and local officials, in their official capacities, may be liable under Section 1983 under circumstances in which [an] alleged unconstitutional act implements or executes a policy, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts represent official policy." Hernandez v. Theriot, 38 F.Supp.3d 745, 747 (M.D. La. 2014). Plaintiffs have asserted a cognizable violation of their rights under the First Amendment: "With a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." Heffernan v. City of Paterson, N.J., 136 S.Ct. 1412, 1417, 194 L.Ed.2d 508 (2016).

#### 1. Plaintiffs have adequately pleaded the facts to support a claim against the City under the "single decision theory of liability."

Defendants argue Plaintiffs have failed to adequately plead a cause of action against the City. Plaintiffs' only direct allegation against the City is the following: "CRAFT was acting under the color of state law and as an employee of VIDALIA when he terminated PLAINTIFFS. Accordingly, VIDALIA is vicariously liable unto

4

PLAINTIFFS for all of acts and omissions of CRAFT described herein under the doctrine of *respondeat superior.*" (Doc. 1, p. 4). Defendants reason that, because a municipality may not be held liable under a theory of *respondeat superior*, and because Plaintiffs allege no other facts against the City, Plaintiffs' claims against the City should be dismissed. Though well-reasoned, Defendants' arguments miss the ultimate mark.

Generally, "[t]o establish municipal liability under § 1983 . . . . [a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). Stated otherwise, "[m]unicipal liability for civil rights violations under § 1983 is based on causation rather than *respondeat superior.*" Bolton v. City of Dallas, Tex., 541 F.3d 545, 548 (5th Cir. 2008). The mere fact that a municipality employs a tortfeasor is insufficient to impose liability upon the municipality. See id.

However, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which [a municipality] may be liable." Brown v. Bryan Cty., OK, 219 F.3d 450, 462 (5th Cir. 2000). "[T]his 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." Valle, 613 F.3d at 542; accord Bruchhaus v. D'Albor, 2:15-CV-2649, 2016 WL 4994718, at *6 (W.D. La. Sept. 14, 2016) ("[It] is well established that a municipality may be held liable for course[s] of action tailored to a

5

specific situation and not intended to control decisions in later situations,' provided that 'the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers.'") (quoting Gonzalez v. Ysleta Indep. School Dist., 996 F.2d 745, 754 (5th Cir. 1993)).

A court addressing a "single decision" claim must also consider the fundamental distinction between final decisionmaking authority and final policymaking authority, as only the latter may give rise to liability:

> Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental in Jett v. Dallas Independent School District, 7 F.3d 1241, 1247 (5th Cir.1993). The distinction between final decisionmaker and final policymaker has its origin in two Supreme Court plurality opinions, Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Both opinions concluded that discretion to exercise a particular function does not necessarily entail final policymaking authority over that function. Pembaur, 475 U.S. at 483-84, 106 S.Ct. 1292; Praprotnik, 485 U.S. at 130, 108 S.Ct. 915. In Jett, we understood the decisionmaking addressed in Pembaur and Praprotnik to include decisions that were "final." 7 F.3d at 1247. We noted that neither of the Supreme Court cases made a "suggestion of any qualification such as 'initial' discretion or the decisionmaker's action being subject to appeal or the like." Id. at 1247-48. And, moreover, Praprotnik states that "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." Praprotnik, 485 U.S. at 127, 108 S.Ct. 915. We held that this statement "applies even to individual decisions which are not reviewable." Jett, 7 F.3d at 1248. Thus, Jett "eschews the importance of administrative reviewability in distinguishing final decisionmaking authority from final policymaking authority." Gelin v. Hous. Auth. of New Orleans, 456 F.3d 525, 530 (5th Cir. 2006).
>
> In Jett, we also recognized support for this position in a Seventh Circuit case, Auriemma v. Rice, 957 F.2d 397 (7th Cir.1992), and in this circuit's own precedents. See Jett, 7 F.3d at 1248. In Auriemma, the Seventh

Circuit assumed that the Chicago Superintendent of Police had final, executive authority to demote police officers. Auriemma, 957 F.2d at 399. But it nevertheless held that such authority could not support municipal liability:

> If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. Action in the course of one's duty is the basis of vicarious liability. That a particular agent is the apex of a bureaucracy makes the decision "final" but does not forge a link between "finality" and "policy".

Id. at 400. And in this circuit, "[w]e took essentially the same approach ... where 'we rejected the line of authority ... which would permit policy or custom to be attributed to the city itself by attribution to any and all officers endowed with final or supervisory power or authority.'" Jett, 7 F.3d at 1248 (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)) (second alteration in original). The finality of an official's action does not therefore automatically lend it the character of a policy. See id. at 1246; Barrow v. Greenville Indep. Sch. Dist., 480 F.3d 377, 382 n. 17 (5th Cir. 2007).

Bolton v. City of Dallas, Tex., 541 F.3d 545, 548–50 (5th Cir. 2008). Thus, neither finality nor reviewability necessarily determine whether an official is the final policymaker as to a particular issue. See id.

For instance, the Fifth Circuit considered "a First Amendment retaliation claim against the City of Jackson, alleging that the mayor, acting through city employees, ended support for a development project proposed by ATBS after Hewitt had made public statements claiming corruption in city government." Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson, Miss., 817 F.3d 163, 164 (5th Cir.2016), cert. denied sub nom. Advanced Tech. Bldg. Sols., LLC v. City of Jackson, Miss., 137 S.Ct. 297, 196 L.Ed.2d 216 (2016). The court granted summary judgment in favor of the city, holding that because the city council, and not the mayor, possessed the

7

ultimate authority to make funding decisions, the mayor was not the final policymaker regarding the development project decision. See id. at 166.

The court further rejected the city's argument that the mayor, in practice, was the final decisionmaker regarding funding issues: "[W]e have explicitly rejected the concept of de facto authority, as has the Supreme Court." Id. at 168. Other courts in our circuit have also determined that mayors were not final policymakers with respect to personnel decisions, including terminations. See, e.g., Metzler v. Kenner City, CV 15-910, 2016 WL 5901886, at *10 (E.D. La. Oct. 11, 2016) (on summary judgment, holding that the mayor of Kenner was not a final policymaker regarding plaintiff's termination, because the Kenner Civil Service Board "has the power to review adverse employment decisions affecting any civil service employee"); contra Knox v. City of Monroe, CIV. A. 07-606, 2009 WL 57115, at *11 (W.D. La. Jan. 8, 2009) (holding that a sanitation supervisor's decision to terminate plaintiff could not sustain municipal liability, because the mayor of the city, a home rule charter municipality, maintained "both final policymaking authority and final decisionmaking authority for termination decisions").

In this case, Defendants concede that "[u]nder the single decision theory of liability, a municipality may be liable for an unconstitutional decision made by the final policymaker when the actor has final policy-making authority on the subject at issue." (Doc. 8, p. 2). Defendants maintain, however, that Plaintiffs' do not adequately allege Mayor Craft had final policymaking authority. Defendants are correct that the Complaint does not contain any specific allegations that Mayor Craft

was the final policymaker with regard to Plaintiffs' terminations. Normally, that determination may end the Court's inquiry. See, e.g., Gopalam v. City of Gonzales ex rel. Arceneaux, CIV.A. 12-542-JJB, 2013 WL 28654, at *4 (M.D. La. Jan. 2, 2013) ("Gopalam's allegation that the Mayor had executive authority over the City of Gonzales and/or the Gonzales City Police Department is a conclusion that does not support a claim for relief above the speculative level in light of the applicable law.").

However, the Fifth Circuit has addressed the situation before this Court directly, and has mandated further inquiry. In Groden v. City of Dallas, Texas, the plaintiff, Groden, alleged that he was unconstitutionally arrested in violation of 42 U.S.C. § 1983. See 826 F.3d 280, 282 (5th Cir. 2016). Groden sought to "establish Monell liability against the city of Dallas for his allegedly unconstitutional arrest," arguing "that the city adopted an unconstitutional policy of retaliating against unpopular-but constitutionally-protected speech and that, acting under this policy, Officer Frank Gorka illegally arrested" him. Id. The trial court dismissed Groden's Monell claim for failure to identify a municipal policymaker. Id. Noting the case presented a question of first impression, the Fifth Circuit reversed, holding that "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." Id. at 284.

The court saw the broad question before it as "whether Groden . . . pled facts that, read in the light most favorable to Groden, show that the statutorily authorized policymaker promulgated an unconstitutional policy." Id. at 285. To answer that

9

legal question, the court looked to one of its prior decisions holding that, "under Texas law, the final policymaker for the city of Dallas is the Dallas city council." Id. at 286. The court then reframed the governing question as follows: "[W]hether Groden pled facts that, read in the light most favorable to him, show that the city council promulgated or ratified the challenged policy." Id. The court found that, because Groden alleged an official city spokesman, acting on behalf of the city council, had publicly announced an official policy of arresting citizens for engaging in "annoying speech," Groden's complaint should not be dismissed. See id.

This case presents nearly identical circumstances. Plaintiffs' allegations, construed favorably, amount to the following: (1) Mayor Craft terminated Plaintiffs after winning the 2016 mayoral race; (2) Mayor Craft's decision was retaliatory, and made with intentional or wanton disregard for Plaintiffs' First Amendment rights; (3) Craft was employed by the City, and acting as the City's mayor, when he terminated Plaintiffs. Plaintiffs' Complaint does not identify a final policymaker.

However, like the panel in Groden, this Court will address the legal issue of whether Mayor Craft was the final policymaker regarding Plaintiffs' terminations. The City is governed by the Lawrason Act, La. R.S. 33:321, *et seq*. See McNeely v. Town of Vidalia, 157 La. 338, 344, 102 So. 422, 423 (1924).[1] Under the Lawrason Act, a mayor generally has the exclusive power to "appoint and remove municipal

---

[1] Absent a legislative or home rule charter, the Lawrason Act is the default form of municipal governance in Louisiana. See La. Rev. Stat. Ann. § 33:321 ("All municipalities shall be governed by the provisions of this Part except those municipalities governed by a special legislative charter or a home rule charter or plan of government adopted pursuant to Article VI of the Constitution of Louisiana.").

10

employees." La. R.S. 33:404(A)(3); accord Op. Att'y Gen. No. 12-0056 (May 3, 2012) (Generally, "the Board of Aldermen does not have the authority to review the termination of municipal employees made by the mayor."); Op. Att'y Gen. No. 10-0163 (Nov. 8, 2010) ("Accordingly, the duties, powers and responsibilities of the mayor of a Lawrason Act municipality include the power to appoint and remove municipal employees as described by La. R.S. 33:404(A)(3)."). "However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or *any department head* shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail." Id. (emphasis added); accord Op. Att'y Gen. No. 12-0074 (Aug. 1, 2012) ("The mayor must seek the concurrence of the board of aldermen to remove any department head.").

Under § 404(A)(3) of the Lawrason Act, Plaintiffs were all employees whom Mayor Craft could have unilaterally terminated without consulting the board of aldermen. None of Plaintiffs' positions fell within the exceptions listed in § 404(A)(3): Kelly Butler, Administrative Assistant/Audio-Visual Technician; Fay Garretson, Deputy Clerk/Office Manager; Juanita Smith, Receptionist/Convention Center Coordinator; Teresa Dennis, Director of Project Development[2]; and Mary Knight,

---

[2] Mrs. Dennis's former position was the closest to an exception as a potential "department head." The term "department head" is not defined in the Lawrason Act. By its plain meaning, however, the term indicates that only the highest ranking official in a municipal department would qualify for the exception. See Op. Att'y Gen. No. 07-0261 (Mar. 12, 2008) ("Generally, the person who holds the position as the leader of a town department is referred to as a 'department head.'"). Decisions by other courts and the Louisiana Attorney General support that conclusion. Prior examples of "department heads" include a fire chief, see Roberts v. Town of Jonesboro, 48,396 (La.App. 2 Cir. 8/7/13, 4), 122 So.3d 1045, 1048, and the "regulatory director" of a city's "regulatory department," see Op. Att'y Gen. No. 11-0084 (June 24, 2011).According to its website, the City has a number of municipal departments, but no "department of project development." Moreover, the website lists various "department heads," including a fire chief, a "department head" of the Street and Sanitation Department, and a

11

Utility Clerk. As a matter of law, then, Mayor Craft was the final policymaker regarding Plaintiffs' terminations. Plaintiffs have adequately pleaded the facts to support a cause of action against the City under the single decision theory of liability.

### 2. Plaintiffs' claims against Mayor Craft in his official capacity are redundant and should be dismissed.

A lawsuit against a government official in his official capacity is, in essence, a lawsuit against the government entity itself, because the entity will ultimately bear any liability imposed. See Mason v. Lafayette City-Par. Consol. Gov't, 806 F.3d 268, 280 (5th Cir. 2015); Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005). Therefore, "[w]hen the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and courts in this Circuit have found it is appropriate to dismiss them." See Deshotels v. Vill. of Pine Prairie, 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012) (Hanna, M.J.), report and recommendation adopted, 11-CV-2052, 2012 WL 1712549 (W.D. La. May 15, 2012) (citing Flores v. Cameron County, Tex., 92 F.3d 258, 261 (5th Cir. 1996); Brittany B. v. Martinez, 494 F.Supp.2d 534, 539 (W.D.Tex. 2007)).

Here, the official capacity claims against Mayor Craft are redundant of the claims against the City. The claims should therefore be dismissed. However, Defendants do not challenge the individual capacity claims against Mayor Craft.[3] Those claims remain viable.

---

Superintendent of Utilities. No "Director of Project Development" is listed. Accordingly, there is no indication that the Director of Project Development was – or is, if the position still exists – a "department head." No evidence to the contrary is presently before the Court.

[3] "In order to succeed on a § 1983 claim against an official in his individual capacity, a plaintiff must 'establish that the defendant was either personally involved in the deprivation or that his wrongful

## III. CONCLUSION

For the foregoing reasons;

IT IS ORDERED that the Motion to Dismiss filed by the City of Vidalia and Mayor Craft, in his official capacity (Doc. 5), and the Motion for Partial Dismissal (Doc. 28) filed by Defendant, the Travelers Indemnity Company, is hereby GRANTED IN PART to the extent that those Motions seek dismissal of Plaintiffs' claims against Defendant the City of Vidalia under the theory of *respondeat superior*, and against Defendant Mayor Craft in his official capacity. Those claims are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Motions to Dismiss are hereby DENIED IN PART to the extent they seek dismissal of Plaintiffs' claims against the City under 42 U.S.C. § 1983 altogether. Those claims, as well as the claims against Mayor Craft in his individual capacity, remain viable.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __11th__ day of April, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge

---

actions were causally connected to the deprivation.'" Mitchell v. City of New Orleans, 184 F.Supp.3d 360, 374 (E.D. La. 2016) (quoting Jones v. Lowndes County, 678 F.3d 344, 349 (5th Cir. 2012)). (quoting James, 535 F.3d at 373). Plaintiffs must allege specific conduct to support an individual capacity claim. See Mitchell, 184 F.Supp.3d at 374. By alleging Mayor Craft himself terminated them, Plaintiffs have satisfied this requirement.