UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KELLY BUTLER, ET AL.,<br>Plaintiffs | CIVIL ACTION NO. 1:16-CV-01158 |
| VERSUS | |
| EDWY G. CRAFT, ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court are two Motions to Quash and for a Protective Order filed by Defendant Edwy G. Craft ("Mayor Craft") and Movant Concordia Bank & Trust Co. ("Concordia Bank"). (Docs. 41, 43). Plaintiffs oppose the Motions (Doc. 42). The Motions seek quashal of a subpoena requiring production of Mayor Craft's personnel records by Concordia Bank, Mayor Craft's former employer.

The Court held a hearing on March 3, 2017, and thereafter conducted a thorough in camera review of the disputed records. Because the records are beyond the proper scope of discovery, and because production of the records would not be proportional to the needs of the case, the Motions are granted.

I. <u>Background</u>

Plaintiffs – all former employees of the City of Vidalia – allege Mayor Craft terminated them because they supported Mayor Craft's opponent in the 2016 mayoral race. Plaintiffs claim their terminations were acts of unconstitutional political retaliation. (Doc. 1, p. 3).

1

Plaintiffs issued a Subpoena to Produce Documents (the "Subpoena") to Mayor Craft's former employer, Concordia Bank, seeking disclosure of the following: "Entire personnel records of Edwy G. Craft and all documents pertaining to Mr. Craft's termination/resignation, including any severance agreements." (Doc. 41-2). Subsequent briefing and argument has made clear that Plaintiffs seek information related to Mayor Craft's departure from Concordia Bank approximately 13 years ago.

Plaintiffs allege that Mayor Craft was terminated after more than 20 years of employment with Concordia Bank. During Mayor Craft's deposition in this case, counsel for Plaintiffs asked Mayor Craft questions about his departure. According to Plaintiffs, Mayor Craft "balked" during questioning. (Doc. 42, pp. 2-3). Plaintiffs argue that the Subpoena may reveal evidence that Mayor Craft was terminated for engaging in self-dealing and dishonest behavior. Such evidence, according to Plaintiffs, may reveal his character for untruthfulness. (Doc. 42, p. 1). Plaintiffs further argue that any evidence of improper patronage in the business sector is relevant to their claims of improper political patronage.

Mayor Craft counters that production of his entire personnel records is overly broad, and would expose confidential information. (Doc. 41-1, pp. 2, 3).[1] Mayor Craft also claims that the information sought is not within the scope of discovery, but is instead a "fishing expedition," and that Plaintiffs' suspicions are not enough to justify further inquiry into a confidential matter. (Doc. 41-1, p. 5). Mayor Craft states that

---

[1] The Subpoena is unquestionably overbroad. In reaching the determinations herein, the Court has considered potential modifications to the scope of the Subpoena. Any such modifications, however, would not bring the information sought within the proper boundaries of discovery.

the circumstances surrounding his departure from Concordia Bank in 2004 are not probative of his motivations for terminating Plaintiffs in 2016. (Doc. 41-1, p. 4).

Concordia Bank opposes production of the records, stating that most are privileged, confidential, or include protected customer information, personal identifying information, and protected competitive information. Concordia Bank additionally states that the Severance Agreement with Mayor Craft contains a confidentiality provision, which should be observed in this litigation. (Doc. 43-1, pp. 1-2).

## II. Law and Analysis

### A. Standing

Both Mayor Craft and Concordia Bank have standing to challenge the subpoena issued to Concordia Bank under Fed. R. Civ. P. 45. See Richardson v. Axion Logistics, LLC, Civ. No. 13-302-BAJ-RLB, 2013 WL 5554641 (M.D. La. Oct. 7, 2013) ("[A] party does not have standing to oppose a subpoena unless the party is 'in possession of the materials subpoenaed' or has 'alleged any personal right or privilege with respect to the materials subpoenaed.'" (citations omitted)).

### B. The Governing Standard: Discoverability, Not Admissibility

In his Motion to Quash, Mayor Craft quotes Rice v. Reliastar Life Ins. Co., for the proposition that the information sought by the Subpoena must be relevant and admissible. See 11-44 (M.D. La. 11/10/11), 2011 WL 5513181, at *2 However, Rice refers to the Federal Rules of *Criminal* Procedure and the criminal subpoena power of Fed. R. Crim. P. 17. That rule of criminal procedure, however, erects a higher

3

burden, and uses a narrower standard, than its civil counterpart, which does not require evidence sought in discovery to be admissible.

Accordingly, the information sought by the Subpoena must be "discoverable," but not necessarily admissible, as stated in Fed. R. Civ. P. 26(b)(1):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

(emphasis added). And evidence is discoverable if it is non-privileged, relevant, and proportional.

Further, in response to a motion to quash, a court: (1) *must* quash or modify the subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden"; (2) *may* quash or modify the subpoena "if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information; or (3) "may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party . . . shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship . . . and . . . ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3).

Additionally, some courts assign a higher burden to parties seeking discovery of personnel files, requiring that (1) the material sought be clearly relevant, and (2)

4

the need for discovery be compelling because the information sought is not otherwise readily available. See Cooperman v. One Bancorp, 134 F.R.D. 4 (D. Me. 1991); see also Fair Housing Center of the Greater Palm Beaches, Inc. v. High Point of Delray Beach Condominium Ass'n, No. 05-81040-Civ, 2006 WL 8066685, *4 (S.D.Fla. Oct. 23, 2006) (holding the portion of an employment record concerning witness's involvement with any prior racial discrimination actions was relevant to the instant action, and compelling production because public records would not encompass all relevant information). Importantly, strong public policy disfavors disclosure of personnel records because disclosure would invade employees' privacy, and because firms might cease to frankly criticize and rate employee performance for fear of potential discovery. *In re* Sunrise Securities Litigation, 130 F.R.D. 560, 580 (E.D. Pa. 1989) (citing New York Stock Exchange, Inc. v. Sloan, 22 F.R.Serv. 2d 500, 503 (S.D.N.Y. 1976)).

The countervailing interest, however, is that discovery must be accorded a broad and liberal scope to allow litigation of all relevant facts, to eliminate surprise, and to promote settlement. See Matter of Hawaii Corp., 88 F.R.D. 518, 524 (D. Hi. 1980). Thus, courts must balance the legitimate discovery value of potential impeachment evidence with the legitimate interests of an employer – particularly a non-party employer – in safeguarding sensitive information about employees. See New York Stock Exchange, Inc., 22 Fed. R. Serv. at *3.

While parties may utilize discovery to obtain information for impeachment purposes, particularly for uncovering prior acts of deception, such discovery must be

reasonably likely to lead to admissible evidence. Nunez v. City of New York, No. 11 Civ. 5845, 2013 WL 2149869, *9 (S.D.N.Y. May 17, 2013) (precluding discovery of a personnel file where defendants did not provide any specific basis that justified seeking impeachment evidence in the plaintiffs' employment records) (citing Currie v. City of New York, No. 10 CV 486, 2012 WL 832256, *2 (E.D.N.Y. March 12, 2012). For instance, in Marlow v. Chesterfield Cty. School Bd., No. 3:10cv18, 2010 WL 3660770, *6 (E.D. Va. Sept. 15, 2010), an age discrimination case, the court weighed the limited discovery purpose of the personnel files against the employees' legitimate privacy interests, and performed an in camera review for those portions of the files that were relevant to reveal any prior acts or statements that may demonstrate age discrimination.

## C. Relevance

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In general, relevance is to be broadly construed. Wyatt v. Kaplan, 686 F.2d 276, 284 (5th Cir. 1982). Plaintiffs argue that Mayor Craft's personnel records are relevant for two reasons. Neither reason is persuasive.

### 1. Mayor Craft's "character for truthfulness."

Plaintiffs maintain the evidence may be probative of Mayor Craft's "character for truthfulness" under Fed. R. Evid. 608(b). In general, "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607.

6

And while "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. . . . the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b).

As to Rule 608(b) evidence of prior acts of untruthfulness, some courts consider five factors in determining discoverability: (1) the prior acts in question must demonstrate a propensity for deception; (2) the extent to which the prior act, even if deceptive, occurred in a context where there is a premium on veracity; (3) the lapse of time between the prior act and the trial testimony; (4) the relationship between the subject matter of the prior deceptive act and that of the instant litigation; and (5) whether the party seeking disclosure has a foundation for its inquiry. See Davidson Pipe Co., 120 F.R.D. at 463; see also Penn v. Knox County, No. 2:11-cv-363-NT, 2012 WL 1681974 (D.Me. May 14, 2012) (witness's prior deceptive act of lying in the course of an investigation into an alleged sexual relationship was discoverable even though it was unrelated to the subject matter of the instant litigation). Moreover, "[e]ven if character evidence is deemed admissible under Rule 608(b), its admissibility is subject to Rule 403." Snider v. New Hampshire Ins. Co., CV 14-2132, 2016 WL 3278695, at *4 (E.D. La. June 15, 2016) (quoting United States v. Skelton, 514 F.3d 433, 444 (5th Cir. 2008)).

Importantly, if a court allows inquiry into specific instances of conduct under Rules 608(b) and 403, extrinsic evidence of such conduct is not admissible:

7

> Under Rule 608(b), "[t]he court may at its discretion permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness's character for truthfulness or untruthfulness." United States v. Williams, 464 F.3d 443, 448 (3d Cir.2006); Fed.R.Evid. 608(b). If the conduct is probative of the witness's character for truthfulness, a party may inquire of that conduct on cross-examination, but may not offer extrinsic evidence of the conduct. Fed.R.Evid. 608(b); Williams, 464 F.3d at 448 ("Under Rule 608(b), specific instances of conduct of a witness, other than conviction for a crime, may not be proved at trial through extrinsic evidence ...."). In other words, a party may ask a witness on cross-examination about a specific instance of conduct probative of that witness's character for truthfulness, but "[i]f the witness denies the conduct, ... the questioning party must take the witness' answer[.]" United States v. Matthews, 168 F.3d 1234, 1244 (11th Cir.1999); United States v. Whitmore, 359 F.3d 609, 622 (D.C.Cir.2004) ("Fed.R.Evid.608(b) prohibits extrinsic evidence on cross-examination and thus crossexaminer is 'stuck with whatever response' witness gives." (citing United States v. Brooke, 4 F.3d 1480, 1484 (9th Cir.1993))). If the conduct is sufficiently prejudicial, however, it is within the discretion of the court to preclude a party from even inquiring about the conduct on cross-examination, pursuant to Rule 403. See Williams, 464 F.3d at 448 (noting that questioning about prior misconduct otherwise permissible under Rule 608(b) may be excluded under Rule 403).

Andrade v. Walgreens-Optioncare, Inc., 784 F.Supp.2d 533, 536 (E.D. Pa. 2011).

This case presents a close question. But the Court cannot find the records discoverable under Rule 608(b).

To begin, the five factors enunciated in Davidson Pipe Co. do not adequately favor Plaintiffs' position. See 120 F.R.D. at 463. The records may have some bearing upon a "propensity for deception." Mayor Craft's employment in the banking industry was an environment placing a "premium on veracity." And Plaintiffs seemed to have some foundation for inquiring about Mayor Craft's departure from Concordia Bank, although the source of that information is unclear. But the operative events occurred approximately 13 years ago. The passage of more than a decade significantly dulls

8

the probative value of the records. And there is no overlap in subject matter whatsoever. The personnel records pertain to events totally unrelated to Plaintiffs' terminations, or even to Mayor Craft's political life. This analysis, while not controlling or entirely one-sided, does not favor disclosure.

Further, the records themselves are almost certainly inadmissible, and are unlikely to lead to the discovery of other admissible evidence. See Fed. R. Evid. 608(b); accord Jordan v. ENSCO Offshore Co., CV 15-1226, 2016 WL 3049565, at *8–9 (E.D. La. May 23, 2016) (excluding prior employment records which allegedly showed the plaintiff misrepresented medical history under Rules 608(b) and 403, because the records were extrinsic evidence of untruthfulness, and "[t]he probative value of [the records] is minimal and is substantially outweighed by the danger of misleading and confusing the jury"). Although admissibility is not the operative standard at this juncture, the Court cannot ignore (and must reasonably consider) the fact that none of the records evaluated in camera could be used at trial. See Tolz v. Geico General Ins. Co., No. 08-80663-CIV, 2010 WL 298397, *4 (S.D. Fla. Jan. 19, 2010) (performance reviews and evaluations were not discoverable as possible impeachment evidence, in part because they would be inadmissible).

The Court reaches no determination about whether inquiry into Mayor Craft's departure from Concordia Bank will be allowed at trial. But again, those events have limited probative value given their age and inapposite subject matter. And such an inquiry would likely have a massive prejudicial effect. Dispute at trial would likewise risk wasting time and confusing a jury by infusing a "mini-trial" about Mayor Craft's

departure from Concordia Bank, an entirely irrelevant subject aside from its potential impeachment value.

In short, the Court is not likely to allow the inquiry. And even if it did, Plaintiffs would merely be allowed to question Mayor Craft about his departure. None of the records sought in the Subpoena could be introduced, at least not for purposes of Rule 608(b). The records are thus not likely to lead to the discovery of admissible evidence.

For all of these reasons, the records sought in the Subpoena are not discoverable under Rule 608(b). The Court pretermits ruling on whether Mayor Craft can be cross-examined regarding the end of his employment with Concordia Bank.

### 2. Mayor' Craft's "intent and motive": patronage.

Second, Plaintiffs maintain the evidence is relevant to Mayor Craft's "intent and motive to reward the replacements with jobs in exchange for their campaign support." (Doc. 42, p. 3). According to Plaintiffs, "[e]vidence of improper patronage in the business sector is easily relevant in a case involving improper political patronage." (Id.). The Court disagrees.

On the one hand, Mayor Craft's actions during unrelated events more than 13 years ago are not indicative of his motives in terminating Plaintiffs. The events are simply, and entirely, unrelated.

On the other hand, Plaintiffs are more likely arguing that Mayor Craft is – by character or in deed – prone to acts of improper patronage. Plaintiffs may be seeking

to prove that alleged proclivity through evidence of character or other "improper acts." Any such use of the evidence would be prohibited. See Fed. R. Evid. 404(a)(1), (b)(1).

### D. Proportionality

Atop irrelevance, proportionality is of serious concern in this case. Courts analyze proportionality using a number of factors, including "the importance of the issue at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Hahn v. Hunt, CV 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016), aff'd, CV 15-2867, 2016 WL 6518863 (E.D. La. Nov. 2, 2016). "Scholarly evaluation of the Federal Rules and the impact of inclusion of the proportionality concept within Rule 26(b)(1)'s threshold scope of discovery indicate 'that non-parties have greater protections from discovery and that burdens on non-parties will impact the proportionality analysis.'" Id. (quoting E. Laporte and J. Redgrave, A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26, 9 Fed. Cts. L. Rev. 57 (2015)).

Here, 546 pages of records are responsive to the Subpoena. Some of the records would be subject to a written confidentiality agreement between Concordia Bank and Mayor Craft. Concordia Bank's has a legitimate interest in preserving that agreement if possible, as does Mayor Craft. Other records contain sensitive, and potentially privileged, information. And most of the records contain information which is safeguarded by state and federal law.

To their credit, Plaintiffs have offered to restrict the scope of documents sought. Plaintiffs have also conceded that reimbursement to Concordia Bank may be appropriate. But the fact remains that Concordia Bank would be forced to analyze, redact, and produce the records. Given the legal strictures at issue, that task would be onerous. The production may require prior notice to customers among other burdensome legal measures. Even if eventually compensated, Concordia Bank would be significantly burdened.

All parties would then undertake their analyses of the records. Legal positions would be forged. Additional discovery and motion practice would undoubtedly follow.

All of these burdens would be borne simply to explore events which occurred more than a decade ago, and which have little or no probative value in this lawsuit.

In fairness to Plaintiffs, at least two proportionality factors support disclosure: access to the information, which lies solely with Concordia Bank, and the parties' respective resources, which Plaintiffs have effectively leveraged by offering to compensate Concordia Bank. But the burdens imposed would be grossly disproportionate to the benefits of allowing the discovery. And the records would do little to resolve the real issues disputed in this lawsuit. As such, even if the records were relevant, the Court further finds them disproportionate to the needs of the case.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that the Motions to Quash and for a Protective Order filed by Defendant Edwy G. Craft ("Mayor Craft") and Movant Concordia Bank & Trust Co. ("Concordia Bank") (Docs. 41, 43) are hereby GRANTED.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana on this 19th day of April, 2017.

                                          Joseph H.L. Perez-Montes
                                          United States Magistrate Judge